Campbell-Sevey, Inc.,                                          Civil No. 08-6284 (JMR/FLN)

        Plaintiff,

        v.                                          **REPORT AND**
                                         **RECOMMENDATION**

Delta-T Corporation and
Bateman Litwin N.V.,

        Defendants and
        Third-Party Plaintiffs,

        v.

Pacific Ethanol Imperial, LLC and
Pacific Ethanol, Inc.,

        Third Party Defendants.

_____

Jonathan M. Bye, Anthony N. Kirwin, John H. Strothman for Plaintiff.
Arthur G. Boylan, Stephen H. Barrows for Defendants and Third-Party Plaintiffs.
Philip J. Kaplan, Norman J. Baer for Third-Party Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 8, 2009 on the Motion to Dismiss by Pacific Ethanol [#38], the Motion to Sever/Transfer by Delta-T Corporation [#56] and Plaintiff's Motion for Summary Judgment [#78]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the Motion to Dismiss by Pacific Ethanol [#38] be **GRANTED** and that the Motion to Sever/Transfer by Delta-T Corporation [#56] be **DENIED.** The Court further recommends that Plaintiff's Motion for Summary Judgment [# 78] be **GRANTED in part** and **DENIED in part**.

# I.    BACKGROUND

This lawsuit arises from interwoven contract disputes relating to the construction of various ethanol plants.  In September 2006, Third-Party Defendant Pacific Ethanol, Inc.,[1] an ethanol fuel plant company headquartered in Delaware, entered into an overarching agreement with Delta-T Corporation, a defendant and third-party plaintiff.  (Kaplan Aff. Ex. B.)  Under this agreement, Delta-T, a Virginia corporation that designs and builds ethanol plants, agreed to provide engineering, procurement, technology and construction services to Pacific Ethanol.  *Id.* Plaintiff Campbell-Sevey, a Minnesota corporation, supplies materials used in ethanol plant construction (*e.g.*, industrial steam, air, and hot water systems.)  (Graves Aff. ¶ 2.)  Under various agreements dating from 2006, 2007 and 2008, Campbell-Sevey agreed to provide materials to Delta-T for the construction of Pacific Ethanol plants.  It appears that Campbell-Sevey did supply these materials to Delta-T.  However, due to a downturn in the ethanol market, Pacific Ethanol is now in the midst of bankruptcy proceedings. As a result, Pacific Ethanol has not paid monies owed to Delta-T.  Similarly, Delta-T (apparently because it has not yet been paid by Pacific Ethanol) has not paid Campbell-Sevey for the materials Campbell-Sevey supplied to Delta-T.   When Delta-T failed to make payment, Campbell-Sevey instituted this lawsuit against Delta-T.   In turn, Delta-T brought counterclaims against Campbell-Sevey as well as third-party claims against Pacific Ethanol.

## 1.  *The 2006 and 2007  "Brawley Purchase Orders"*

---

[1] Pacific Ethanol, Inc. is a Delaware corporation and the parent company of various Pacific Ethanol entities, including Pacific Ethanol Imperial, LLC, the second third-party defendant in this case. These entities will be referred to collectively as "Pacific Ethanol" unless it is necessary to distinguish between the two.

Campbell-Sevey alleges Delta-T owes over $1.5 million under the terms of two purchase orders for equipment and services related to a Pacific Ethanol plant located in Brawley, California. (Graves Aff. Exs. D, E.)  The parties refer to these purchase orders as the 2006 and 2007 "Brawley Purchase Orders," and the Court will adopt this terminology for purposes of clarity.  Although Delta-T made partial payment under the Brawley Purchase Orders, Campbell-Sevey alleges Delta-T still owes $1,545,734.28 plus interest.  *Id.* Ex. C.  Subsequent to the 2006 Brawley Purchase order, but prior to the 2007 Brawley Purchase Order, Campbell-Sevey and Delta-T entered into a "Key Supplier Agreement" intended to govern the supplier relationship between the parties.  *Id.* Ex. F.  The Key Supplier Agreement contains a dispute resolution clause, stating in part:  "In the event of a claim by Seller resulting from actions of the Owner, Seller's recovery from Buyer shall not exceed Buyer's recovery from Owner relative to such a claim." *Id.*  The "Owner" is defined in the definitions section as, "The entity which owns the Project as defined in the Order," and would therefore be Pacific Ethanol in this situation.  *Id.* Ex. F.  Delta-T argues that this particular clause in the Key Supplier Agreement, as well as similar language in the 2006 Brawley Purchase Order, constitute "pay when paid" provisions that bar Campbell-Sevey from recovering from Delta-T until Delta-T can recover from Pacific Ethanol. (Delta-T Mem. Opp. S.J. 14-15, Doc. No. 88.)

a.  The Purported Assignments and the July 2008 Payment Agreement Between Campbell-Sevey and Pacific Ethanol

Two other agreements exist that relate to the Brawley Purchase Orders.  First, when Pacific Ethanol failed to pay Delta-T for materials Delta-T had procured from Campbell-Sevey under the Brawley Purchase Orders, Delta-T purported to assign its obligations under the Brawley Purchase Orders to Pacific Ethanol.  (Answer to First Am. Compl. ¶ 76, Doc. No. 25.)

3

However, the Brawley orders contained provisions expressly prohibiting assignment without Campbell-Sevey's written consent. [2]  Delta-T now argues, however, that the assignment to Pacific Ethanol is valid because Campbell-Sevey waived these written consent provisions.  In the alternative, Delta-T argues that at the very least a genuine issue of material fact exists as to waiver.

Delta-T sent a letter to Campbell-Sevey dated February 13, 2008, stating that Delta-T intended to assign its obligations under the Brawley Purchase Orders to Pacific Ethanol and requesting certification of the amount due to Campbell-Sevey under the Orders. (Graves Aff. Ex. H.)  A letter from Campbell-Sevey to Delta-T dated February 14, 2008 responds that assigment would not be "possible or acceptable" and that Campbell-Sevey required assurances that Delta-T and its parent company, Defendant and Third-Party Plaintiff Bateman Litwin, would ensure that Campbell-Sevey would be promptly paid for $3 million worth of supplies already provided. (Graves Aff. Ex. I.)  Nevertheless, Delta-T went ahead with its plan to assign its obligations to Pacific Ethanol.  A letter from Delta-T to Campbell-Sevey dated March 18, 2008 includes copies of the executed assignments between Delta-T and Pacific Ethanol and states that Pacific Ethanol has "assumed the responsibility for making all payments owed to [Campbell-Sevey] under the current purchase order(s)."  (Graves Aff. Ex. H.)  The letter also requests that future invoices and payment inquiries from Campbell-Sevey be directed to Pacific Ethanol, not to Delta-T.  *Id.*  On this record, Delta-T argues that at the very least a disputed issue of material fact exists with

---

[2] The 2006 Brawley Purchase Order states in part on page 13, Paragraph 19, Subdivision A, "Assignment," "Seller shall not assign this Purchase Order, or subcontract all or any part of its obligations, duties or responsibilities hereunder to any subcontractor or supplier without the prior written consent of Buyer, and any attempted assignment without such written consent shall be void." (Graves Aff. Ex. D.)  The Key Supplier Agreement, which the parties agree governs at least the 2007 Brawley Purchase Order, contains Article 8.2, entitled "No Assignment."  It states, "Neither Party may assign or convey this Agreement or its obligations hereunder without the other's prior written consent, except that either party may assign this Agreement to a purchaser of a controlling interest in its capital stock or substantially all of its assets." (*Id.* Ex. F.)

4

respect to the issue of waiver, but alternatively argues that the valid assignment bars Campbell-Sevey's claims against Delta-T.

The second subsequent agreement that relates to the Brawley Purchase Orders is a July 2008 Payment Agreement between Campbell-Sevey and Pacific Ethanol. This agreement is a direct payment agreement under which Pacific Ethanol agreed to directly pay Campbell-Sevey the $1,545,734.28 due under the Brawley Purchase Orders. (Graves Aff. Ex. J.) The contract acknowledges that Delta-T and Pacific Ethanol agreed to the assignment of the Brawley Orders from Delta-T to Pacific Ethanol, but does not state that Campbell-Sevey consented to the assignment. *Id.* at ¶ B. It also states that the July 2008 Payment Agreement "in no way releases Delta-T or its parent or affiliates from any liability they may have to Campbell-Sevey for payments not timely made" by Pacific Ethanol." *Id.* at ¶ E. When Campbell-Sevey instituted this lawsuit, it initially named Pacific Ethanol as a defendant. (Compl., Doc. No. 1.) However, after Pacific Ethanol moved to dismiss for lack of personal jurisdiction, Campbell-Sevey agreed to dismiss its claims against Pacific Ethanol in Minnesota without prejudice. (Doc. Nos. 5, 17.) In February 2009, Campbell-Sevey subsequently refiled against Pacific Ethanol in the U.S. District Court for the District of Colorado. (Kirwin Aff. Ex. B; Strothman Aff. Ex. E.) The Colorado court entered a consent judgment on August 7, 2009 under which Pacific Ethanol agreed to pay the full $1,545,734.28 plus interest and attorney's fees to Campbell-Sevey, and Campbell-Sevey agreed to dismiss its claims against Pacific Ethanol without prejudice. (Kirwin Aff. Exs. C, D.) Still, Pacific Ethanol has made no payments to Campbell-Sevey to date and has indicated that it will not be able to make any payments in the future due to its current financial situation. (Graves Aff. ¶ 17.) Various closely related affiliates of Pacific Ethanol Inc. and Pacific Ethanol Imperial, LLC instituted bankruptcy proceedings in the U.S. Bankruptcy Court

5

for the District of Delaware on May 17, 2009.  (Baer Aff. Ex. A.)  Due to the close relationship between the Pacific Ethanol entities, The Honorable Kevin Gross stayed proceedings in this Minnesota litigation with respect to Delta-T's third-party claims against Pacific Ethanol.  (Stip. Move Date for Hearing Ex. A (Doc. No. 76); Oct. 8, 2009 Minute Entry (Doc. No. 108); (Doc. No. 87 at ¶ 8; *see also In re Pacific Ethanol Holding Co. LLC*, Case No. 09-11713 (Bankr. D. Del.) (relevant language found at Doc. No. 221, Ex. A at ¶ 10.)))  The stay expired on December 31, 2009.[3]   As the stay has now expired, the Court is free to rule on Pacific Ethanol's motion to dismiss for lack of personal jurisdiction.  *See* Letter to Magistrate Judge by Pacific Ethanol. (Doc. No. 110.)

>    2.  *The April 2008 Payment Agreement Between Campbell-Sevey and Delta-T*

Delta-T, after making timely payments to Campbell-Sevey from 2005 to 2007, informed Campbell-Sevey in December 2007 that it was experiencing financial difficulties and would not be able to make timely payments for amounts owed in excess of $10 million under various purchase orders. (Graves Aff. ¶ 4.)  Eventually, in April 2008, Campbell-Sevey and Delta-T entered into a Payment Agreement that altered the payment schedule under the past due purchase orders. (Graves Aff. Ex. A.)  However, the agreement expressly excluded the Brawley Purchase Orders.  *Id.*  The April 2008 Payment Agreement required Delta-T to pay approximately $7.3 million in monthly installments, of which Delta-T has paid approximately $6.8 million, leaving a principal balance of $646,998.73.

>    3.  *The Bateman Guaranty*

---

[3] The stay was originally ordered through September 21, 2009 but was subsequently extended to December 31, 2009. (Stip. Move Date for Hearing Ex. A (Doc. No. 76); Oct. 8, 2009 Minute Entry (Doc. No. 108); (Doc. No. 87 at ¶ 8; *see also In re Pacific Ethanol Holding Co. LLC*, Case No. 09-11713 (Bankr. D. Del.) (relevant language found at Doc. No. 221, Ex. A at ¶ 10.)))

While Campbell-Sevey and Delta-T were negotiating the April 2008 Payment Agreement, they were also in discussions regarding a guaranty agreement between Campbell-Sevey and Delta-T's parent company, Bateman Litwin. (Graves Aff. Exs. B, K.) The Bateman Guaranty states its effective date as April 30, 2008 and was executed by Bateman Litwin on May 6, 2008. (Graves Aff. Ex. K.) The Guaranty's opening paragraph reads as follows:

> Effective the 30th day of April, 2008, for value received and to induce Campbell-Sevey Inc. ("CS") to forebear from collecting certain past due amounts owed and to issue certain future discounts pursuant to one or more purchase orders and related agreements ("Agreements") entered into between CS and Delta-T Corporation ("Delta-T") by entering into a Payment Agreement ("Payment Agreement") dated on or about April 22, 2008, Bateman Litwin NV ("Bateman" or "Guarantor"), hereby irrevocably guarantees to CS and its successors, transferees and assigns, the prompt and complete performance by Delta-T of all of the terms and conditions of the Payment Agreement and Agreements, including all amendments and changes to the Agreements that have been executed to date and may be executed in the future; provided however, that (i) Guarantor shall have all the rights that Delta-T has under the Payment Agreement and Agreements to the extent not in conflict with the payment Agreement and (ii) Guarantor's liability under this Guaranty shall be limited to the costs of collection plus the lesser of: (a) the sum of eight million dollars ($8,000,000.00); or (b), the total liability of Delta-T under the Payment Agreement and Agreements.

*Id.* Delta-T argues that the Guaranty refers only to purchase orders related to the April 2008 Payment Agreement and that the term "Agreements" as used in the Guaranty does not extend to the Brawley Purchase Orders. (Delta-T Mem. Opp. S.J. 34.) Campbell-Sevey contends that the Guaranty extends to all agreements between Delta-T and Campbell-Sevey. (Pltf's Mem. Supp. S.J. 12, Doc. No. 80.)

*4. Campbell-Sevey's Claims for Extra Service Hours*

Campbell-Sevey argues it is also entitled to summary judgment against Delta-T for extra service hours related to three ethanol plants. Campbell-Sevey argues it is owed $31,960 for the "Riga" plant, $3,160 for the "Pinal" plant, and $3,160 for the "Madrid" plant per the terms of

separate purchase orders for each plant. (Graves Aff. Ex. C.) Delta-T argues that summary judgment cannot be granted on these claims because they were not properly asserted in Campbell-Sevey's First Amended Complaint. (Doc. No. 22.) Campbell-Sevey appears to contend that these purchase orders would fall under the terms of the Bateman Guaranty. (Pltf's Mem. Supp. S.J. 11-12.)

### 5. Delta-T's Counterclaim Against Campbell-Sevey

Lastly, Campbell-Sevey asserts that it is entitled to summary judgment on Delta-T's counterclaim alleging that Campbell-Sevey is liable to Delta-T for actual damages and liquidated damages arising from seven purchase orders. (Delta-T Counterclaim at ¶¶ 44-48, Doc. No. 25.) Delta-T alleges that it suffered damages when Campbell-Sevey made late deliveries on each of these purchase orders, which relate to five ethanol plants. *Id.* Delta-T contends that genuine issues of material fact exist with respect to liability and damages for each purchase order. The facts relating to the counterclaim will be discussed in more detail below.

## II.    LEGAL ANALYSIS

### A.  This Court Lacks Personal Jurisdiction Over Pacific Ethanol

Pacific Ethanol moves the Court to dismiss Delta-T and Bateman's Third-Party Complaint for lack of personal jurisdiction.[4] To sufficiently allege personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecom*, 89 F.3d 519, 522 (8th Cir. 1996). However, if the defendant challenges personal jurisdiction, the plaintiff has the burden of proving facts supporting personal jurisdiction. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th

---

[4] The Court will refer to the Third-Party Plaintiffs collectively as "Delta-T" unless the analysis requires the Court to distinguish between Delta-T and Bateman Litwin.

Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004)). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

A federal court may exercise jurisdiction "over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Nippon Carbon*, 528 F.3d at 1090. As Minnesota applies its long-arm statute to the fullest extent permissible under due process, the Court need only determine whether exercise of personal jurisdiction in this instance comports with federal due process. *Id.*; Minn. Stat. § 543.19; *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992). With respect to personal jurisdiction, due process requires "minimum contacts" with the forum state.*" Bell Paper Box, Inc. v. Trans Western Polymers, Inc*., 53 F.3d 920, 922-21 (8th Cir. 1995). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Nippon Carbon*, 528 F.3d at 1090-91.

The Eighth Circuit has adopted a five-part test for assessing minimum contacts:  (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* at 1091. The most important factors are those which analyze forum contacts. *Trans Western Polymers,* 53 F.3d at 922.

9

To maintain personal jurisdiction and satisfy the "purposeful availment" requirement, the defendant's contacts with the forum state must be more than random, fortuitous, attenuated, or a result of the unilateral activity of another party or third person. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Actions by the defendant *itself* must have created a "substantial connection" with the forum. *Id.* (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 (1957)) (emphasis in original). In the case at bar, Delta-T has failed to satisfy its burden of proving facts to support personal jurisdiction. [5]

The record shows that neither Pacific Ethanol, Inc. nor Pacific Ethanol Imperial, LLC have offices, employees, agents, bank accounts or properties in Minnesota. (Miller Aff. ¶¶ 2–3.) The third-party plaintiffs proffer no evidence to controvert Pacific Ethanol's assertion that it has never solicited business in Minnesota. *Id.* The record shows that Pacific Ethanol contracted with Delta-T via the 2006 and 2007 Brawley Purchase Orders to help Pacific Ethanol build ethanol plants, and that Delta-T later subcontracted with Campbell-Sevey, its supplier, to provide Delta-T with supplies and services related to the Brawley orders. There is no evidence that Pacific Ethanol requested or required that Delta-T use Campbell-Sevey or any other Minnesota entity as a supplier. (Miller Aff. ¶ 4.) At least during the initial stages of the project, there is no evidence that Pacific Ethanol was in direct contact with Campbell-Sevey.

Later on, however, Pacific Ethanol entered into one direct payment agreement with Campbell-Sevey – the "July 2008 Payment Agreement." (Graves Aff. Ex. J.) When Campbell-Sevey became concerned that Delta-T was not going to fulfill its payment obligations for the

---

[5] The Court notes that Delta-T's brief in opposition to Pacific Ethanol's motion to dismiss includes barely a page and a half of argument (out of 12 pages) in support of personal jurisdiction. (Delta-T Mem. Opp. Mot. Dismiss at 11-12.) Delta-T spends more space arguing for severance, using an entire page to cite cases where the courts *lacked* personal jurisdiction but decided to sever and transfer the claims against the defendant challenging personal jurisdiction. *Id.* at 9-11.

supplies and services memorialized in the Brawley Purchase Orders, Campbell-Sevey decided to go directly to Pacific Ethanol and request a back-up agreement. Pacific Ethanol agreed to pay Campbell-Sevey the amount outstanding under the Brawley orders, and Campbell-Sevey agreed to deliver remaining supplies to California. *Id.* The July 2008 Agreement, which contained a California choice-of-law provision, was negotiated entirely via electronic and telephone communication. (Miller Aff. ¶ 7.) No one from Pacific Ethanol went to Minnesota, and Delta-T has presented no evidence to contradict Pacific Ethanol's contention that it never intended to rely on the protection of Minnesota law. *Id.*

Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Trans Western Polymers*, 53 F.3d at 922 (quoting *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)). This is particularly true where the defendant is a buyer, rather than a seller. *Id.* Here, where 1) the defendant is a buyer, 2) the contract included a California choice-of law-provision, 3) Minnesota resident Campbell-Sevey (not foreign defendant Pacific Ethanol) solicited the July 2008 Agreement, 4) Pacific Ethanol never came to Minnesota to negotiate the agreement, and 5) the contract was short term (a simple payment agreement coupled with a promise to deliver one shipment of goods to California), minimum contacts with Minnesota are not established.

Delta-T contends that Delta-T served as Pacific Ethanol's agent under the Brawley Purchase Orders, and that this agency relationship establishes minimum contacts. The case Delta-T cites in support of this contention, *Chamfer Eng'g, Inc. v. Tapco Intern., Inc.*, 82 F.R.D. 33, 35 (D. Minn. 1979), is entirely distinguishable from the instant case. In *Chamfer*, a written agreement clearly established the agency relationship that the court relied on to find personal jurisdiction. *Id.* Here, Delta-T relies solely on the fact that Pacific Ethanol knew about Delta-

11

T's relationship with Campbell-Sevey and "failed to object." (Delta-T Mem. Opp. Mot. Dismiss 11-12.) This "omission" by Campbell-Sevey is insufficient to establish either agency or personal jurisdiction. Therefore, Delta-T's contacts with Campbell-Sevey, which resulted from Delta-T's unilateral activity, cannot be fairly imputed to Pacific Ethanol.

Delta-T also argues that its purported assignment of the Brawley Purchase Orders to Pacific Ethanol establish minimum contacts, reciting the unremarkable contract principle that an assignee "steps into the shoes" of the assignor. As discussed below, the Court finds these purported assignments invalid. Nevertheless, even if the assignments were valid, 1) the assignment agreements were between Pacific Ethanol and Delta-T, not between Pacific Ethanol and Campbell-Sevey, and 2) the intended effect of the assignments was simply for Pacific Ethanol to pay the outstanding amounts under the Brawley Purchase Orders to Campbell-Sevey. (Graves Aff. Ex. I.) Thus, the contacts between Pacific Ethanol and the forum state under the assignments are at least as attenuated as those under the July 2008 Payment Agreement, and arguably more attenuated because the assignments only indirectly implicated Campbell-Sevey.

In sum, the Court finds that Delta-T has failed to satisfy its burden to set forth facts establishing personal jurisdiction over Pacific Ethanol, Inc. and Pacific Ethanol Imperial, LLC. Therefore, Delta-T and Bateman's third-party complaint should be dismissed in its entirety for lack of personal jurisdiction.[6]

## B. Delta-T's Motion to Sever/Transfer Claims Should Be Denied

Delta-T argues that all claims related to the Brawley Purchase Orders should be severed and transferred to the District of Colorado. Under Federal Rule of Civil Procedure 21, courts may

---

[6] As the Court finds that it lacks personal jurisdiction over Pacific Ethanol, it need not reach the secondary arbitration question raised by the parties.

sever any claim against a party. Fed. R. Civ. P. 21. Questions of severance are addressed to the broad discretion of the district court. *Chicago, R.I. & P.R. Co. v. Williams*, 245 F.2d 397, 404 (8th Cir. 1957); 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1689 (3d ed. 2009). After severance, claims generally proceed as discrete independent actions. The Court has the authority to transfer these discrete claims to any other district or division where they might have been brought. 28 U.S.C. § 1404(a); *E.S. v. Indep. School Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 568 (8th Cir. 1998). With regard to transfer, courts must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the interests of justice; and (4) other factors on a case-by-case basis. *See Terra Int'l., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

Delta-T's motion requests that 1) Campbell-Sevey's Brawley Purchase Order claims against Delta-T and 2) that Delta-T's third-party Brawley Purchase Order claims against Pacific Ethanol be severed and transferred to Colorado. First, there is nothing in the record to indicate that Campbell-Sevey's Brawley Purchase Order claims against Delta-T have any connection to Colorado. Campbell-Sevey is a Minnesota corporation, Delta-T is a Virginia corporation, and Bateman Litwin is a foreign corporation based in Europe. The Brawley Purchase Orders involve an ethanol plant that was to be constructed in California, not Colorado. Although Campbell-Sevey did at one point have Brawley Purchase Order claims against Pacific Ethanol in Colorado, that lawsuit has since been resolved. Still, Delta-T contends that even though Campbell-Sevey's Colorado case has been concluded, severance and transfer remain appropriate. The Court disagrees. As Campbell-Sevey's Brawley claims are properly brought in Minnesota and bear no relation to the District of Colorado, the Court declines to use its discretion to sever and transfer those claims.

13

With respect to Delta-T's third-party claims, as discussed above, the Court has determined that it lacks jurisdiction over Pacific Ethanol. Delta-T cites *St. Paul Fire & Marine Ins. Co. v. Servidone Const.Corp.*, 778 F.Supp. 1496 (D. Minn. 1991) for the proposition that courts may sever and transfer claims in the interests of justice even after finding a lack of personal jurisdiction. Unlike the situation here, however, the court in *St. Paul Fire* was concerned that the plaintiff's claims against the defendants who had challenged personal jurisdiction would be time-barred in the court with proper jurisdiction. *Id.* at 1507-08. Thus, the court in *St. Paul Fire* found that simply dismissing the claims for lack of personal jurisdiction was inappropriate, and instead decided that severance and transfer was both within its power and served the interests of justice. *Id.* In contrast, there appears to be no barrier to Delta-T's re-filing the Third-Party Complaint in another district where Pacific Ethanol does not contest jurisdiction. There also appears to be no particular reason why that district should be the District of Colorado.[7] Therefore, the Court declines to sever and transfer the third-party claims against Pacific Ethanol.

### C. Campbell-Sevey's Motion for Summary Judgment Should Be Granted In Part and Denied In Part [8]

_____

[7] Delta-T also cites *Westvaco Corp. v. Viva Magnetics Ltd.*, No. 00-cv-9399, 2003 WL 21136729 at *3 (S.D.N.Y. May 15, 2003) and *In Re: Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 37 (D. D.C. 2003). Both cases are clearly distinguishable. In *Westvaco*, the court found that the defendant challenging personal jurisdiction had substantial contacts with California, where the Court transferred the claims – including a pending lawsuit. 2003 WL 21136729 at *3. Pacific Ethanol does not have substantial contacts with Colorado or a pending lawsuit in Colorado. In *Vitamins*, the court found that important evidence and witnesses were located in the district to which the court transferred the claims. 270 F. Supp. 2d at 37. Once again, that is not the case here. There is nothing in the record indicating that Pacific Ethanol has witnesses or evidence located in Colorado.

[8] Contrary to Delta-T's assertion, Campbell-Sevey's Motion for Summary Judgment is not premature under Federal Rule of Civil Procedure 56(f). Rule 56(f) states that a court may, in its discretion, deny a motion for summary judgment if a party opposing the motion "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). Here, though, Delta-T has had ample opportunity to complete discovery necessary to defend against Campbell-Sevey's motion. Although the fact discovery remained open at the time Delta-T submitted its responsive memorandum and affidavits, Rule 56(f) does not require the completion of all discovery before a court may grant summary judgment. *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997). Moreover, the Court finds that the record submitted by Delta-T is sufficiently robust to support a summary judgment determination and further finds that Delta-T's proposed additional topics for discovery are

14

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue

unnecessary. *Id.* at 1238-39.

15

for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

1.  *Campbell-Sevey is Entitled to Summary Judgment on the Brawley Purchase Orders (Count 2)*

Campbell-Sevey argues that it is entitled to summary judgment on the remaining balance due on the 2006 and 2007 Brawley Plant Purchase Orders.

a.  The Agreements Between Campbell-Sevey and Delta-T Do Not Contain "Pay When Paid" Clauses

Delta-T argues that language in the 2006 Brawley Purchase Order and language in the Key Supplier Agreement (which the parties agree governs the 2007 Brawley Purchase Order) constitute "pay when paid" clauses that prohibit recovery by Campbell-Sevey against Delta-T until Delta-T recovers from Pacific Ethanol. (Delta-T Mem. Opp. S.J. 9.) Valid "pay when paid" clauses are a type of contingent payment obligation that makes the subcontractor's receipt of payment contingent on the general contractor's receipt of payment from the owner.[9] Va. Prac. Construction Law § 10:9 (2009).

It is instructive to compare the language of the contracts at issue here with the contract language in the Virginia Supreme Court "pay-when-paid" case cited by Delta-T. In *Galloway Corp. v. S.B. Ballard Constr. Co.*, 464 S.E. 2d 349 (Va. 1995), the court found that the following two contract provisions (found within the "payment terms" portion of the contract) constituted a valid "pay-when-paid" defense: 1) "The Contractor shall pay the Subcontractor each progress

---

[9] The parties agree that Virginia law governs the Key Supplier agreement and therefore the 2007 Brawley Purchase Order. Although the parties disagree as to whether California law or Virginia law applies to the 2006 Brawley Purchase Order, the Court need not decide this issue because the plain language of the agreements do not constitute pay-when-paid provisions under either state's laws. Under California law, these types of provisions are void. *See, e.g.*, *Wm. R. Clark Corp. v. Safeco Ins. Co.*, 938 P.2d 372, 377 (Cal. 1997). Thus, for purposes of analysis and comparison, the Court will analyze the contract under Virginia law.

16

payment within three working days *after the Contractor receives payment from the Owner*"; and 2) "Final payment, constituting the entire unpaid balance of the Subcontract sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed … *and the Contractor has received payment from the Owner.*" *Id.* at 352 (alteration in original); *see also Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 720, 724-25 (4th Cir. 2000) (upholding district court's finding of a valid pay-when-paid provision consisting of the following language: "Notwithstanding any other provision hereof, payment by Owner to General Contractor is a condition precedent to any obligation of General Contractor to make payment hereunder; General Contractor shall have no obligation to make payment to Subcontractor for any portion of the Sublet Work for which General Contractor has not received payment from the Owner."). These payment provisions are crystal clear as to the order of payment. In contrast, the payment provisions at issue here look nothing like the *Galloway* or *Moore Bros.* contracts; the language used in the Key Supplier Agreement and the 2006 Brawley Purchase Order makes no reference to when or whether Delta-T received payment.

The payment provision of the Key Supplier Agreement states: "Payment shall be due net sixty (60) days from the date that [Delta-T] receives the invoice. Payment of invoices will be made on or about the 25th of each month." (Graves Aff. Ex. F.) The next section states that Campbell-Sevey shall issue invoices upon delivery or completion of all goods and/or services. *Id.* The 2006 Brawley Purchase Order's payment terms section states, "Payment shall be due net sixty (60) days from the later of the date [Delta-T] accepts the Goods and/or Services invoices, or the date that [Delta-T] receives an acceptable invoice." (Graves Aff. Ex. F.) Exhibit K to the 2006 Brawley Purchase Order is entitled "INVOICE AND SHIPPING INSTRUCTIONS" and states that all invoices must be received by Delta-T by the 20th of each

17

month.  *Id.*   These provisions are not subject to any conditions precedent and the plain language of these agreements makes absolutely no reference to Delta-T's receipt of payment from Pacific Ethanol.  Nevertheless, Delta-T points to the dispute resolution provisions of the Key Supplier Agreement and the 2006 Brawley Purchase Order and argues that these provisions constitute a valid "pay-when-paid" defense.

The dispute resolution clause of the Key Supplier Agreement states:  "In the event of a claim by [Campbell-Sevey] resulting from actions of [Pacific Ethanol], [Campbell-Sevey's] recovery from [Delta-T] shall not exceed [Delta-T's] recovery from [Pacific Ethanol] relative to such a claim."  (Graves Aff. Ex. F.)   The Claims and Disputes section of the 2006 Brawley Purchase Order contains identical language and an additional clause stating, "…and it shall be a condition precedent to any recovery by [Campbell-Sevey] that [Delta-T] first recover from [Pacific Ethanol]." (Graves Aff. Ex. D.)   Read together with the unambiguous payment provisions, this dispute resolution language does not detract from Delta-T's clear, non-contingent obligation to pay Campbell-Sevey under the terms of the payment provisions.  Under standard contract interpretation rules, if general and specific clauses conflict, the specific clause governs the meaning of the contract.  Restatement (Second) of Contracts § 203(c); Williston on Contracts § 32:10.  Thus, although the dispute resolution language "resulting from the actions of Pacific Ethanol" theoretically could be read broadly to include the situation where Delta-T's non-payment to Campbell-Sevey "results from" Pacific Ethanol's non-payment to Delta-T, this expansive interpretation is clearly foreclosed by the non-contingent language of the payment provisions.  Moreover, even read broadly and taken in the light most favorable to Delta-T, no reasonable jury could find that the broad dispute resolution language meets the exacting *Galloway* standard requiring "an express condition clearly showing" the intention of the parties

18

to create a "pay-when-paid" provision. 464 S.E. 2d at 354. Unlike the contract in *Galloway*, the dispute resolution language does not even mention payment – it simply mentions a "claim." [10] Also unlike the *Galloway* contract, the agreements at issue contain specific non-contingent payment terms that do not mention Pacific Ethanol's payment to Delta-T as a condition precedent to Delta-T's payment to Campbell-Sevey. For these reasons, the Court finds that neither the Key Supplier Agreement or the 2006 Brawley Purchase Order contains a valid "pay-when-paid" provision.

### b. Delta-T's Purported Assignments Do Not Preclude Summary Judgment; Campbell-Sevey Did Not Waive Its Written Consent Rights

Delta-T next argues that Campbell-Sevey is barred from recovery by Delta-T's purported assignment of all payment obligations to Campbell-Sevey under the Brawley Purchase Orders to Pacific Ethanol. Although the Brawley Purchase Orders expressly prohibit assignment without written consent, Delta-T contends that Campbell-Sevey is not entitled to summary judgment because a genuine issue of material fact exists as to whether Campbell-Sevey waived the written consent provisions.[11]

Delta-T has provided no evidence that creates a genuine issue of material fact as to Campbell-Sevey's waiver of the written notice provisions. To the contrary, it is clear that Campbell-Sevey's consistent message to Delta-T has been that Campbell-Sevey expected Delta-

---

[10] The Court notes that its reading of the contract does not foreclose the application of the dispute resolution provisions. For example, a construction delay could result from the actions of Pacific Ethanol and cause a claim against Delta-T by Campbell-Sevey. The dispute resolution provisions would likely apply in that situation.

[11] The 2006 Brawley Purchase Order states in part on page 13, Paragraph 19, Subdivision A, "Assignment," "Seller shall not assign this Purchase Order, or subcontract all or any part of its obligations, duties or responsibilities hereunder to any subcontractor or supplier without the prior written consent of Buyer, and any attempted assignment without such written consent shall be void." (Graves Aff. Ex. D.)

     The Key Supplier Agreement, which the parties agree governs at least the 2007 Brawley Purchase Order, contains Article 8.2, entitled "No Assignment." It states, "Neither Party may assign or convey this Agreement or its obligations hereunder without the other's prior written consent, except that either party may assign this Agreement to a purchaser of a controlling interest in its capital stock or of substantially all of its assets." (Graves Aff. Ex. F.)

T to remain ultimately responsible for the payments it promised Campbell-Sevey under the Brawley Purchase Orders. After Campbell-Sevey first had notice that Delta-T intended to assign its payment obligations to Pacific Ethanol, Campbell-Sevey responded with a February 14, 2008 letter stating that assignment would not be "possible or acceptable to Campbell-Sevey without our being assured that Delta-T and its parent stand behind the assignee in assuring we are promptly paid under the terms of the contracts you wish to assign." (Graves Aff. Ex. I.) Although Delta-T characterizes that message as "equivocal" with respect to consent, the Court disagrees. The quoted language indicates that Campbell-Sevey does not agree to assignment and further indicates that it would not even consider doing so unless Campbell-Sevey received assurances that Delta-T and Bateman would remain ultimately responsible for payment. Delta-T has brought forth no evidence showing that it made such assurances.

Delta-T argues that Campbell-Sevey's "inconsistent" behavior after Delta-T sent Campbell-Sevey executed copies of the purported assignments on March 18, 2008 creates a genuine issue of material fact. Delta-T's first example of Campbell-Sevey's "inconsistent behavior" is that one month after receiving copies of the assignments, Campbell-Sevey and Delta-T entered into the April 2008 Payment Agreement (discussed below) that allowed Delta-T to make delayed payments on non-Brawley purchase orders. (Graves Aff. Ex. A.) The April 2008 Agreement expressly excluded the Brawley Purchase Orders (as well as purchase orders relating to the Stockton ethanol plant) and stated that "the parties' rights and liabilities related to these Pacific Projects are expressly reserved and not in any way compromised or affected by this Payment Agreement." The April 2008 Agreement acknowledges the bare fact that Delta-T and Pacific Ethanol agreed to an assignment, but does not state that Campbell-Sevey consented to the assignments. Nevertheless, Delta-T appears to argue that there can be no other reason for

20

Campbell-Sevey to exclude the Brawley Purchase Orders from the April 2008 Agreement other than Campbell-Sevey's belief that the assignments were valid. (Delta-T Mem. Opp. S.J. 19.) The Court fails to see why it must accept this conclusion, especially because 1) Delta-T brings forth no evidence to support this contention, 2) the agreement also excludes Stockton purchase orders that were not subject to any assignment, and 3) the Court can imagine any number of other reasons why a business entity might want to treat some purchase orders differently than other purchase orders.

Delta-T's second example of Campbell-Sevey's "inconsistent" behavior is Campbell-Sevey's decision to enter into a "back-up" payment agreement with Pacific Ethanol in July 2008 regarding payment for the Brawley supplies. However, the July 2008 Payment Agreement stated that it "in no way releases Delta-T or its parent or affiliates from any liability they may have to Campbell-Sevey for payments not timely made by PE Imperial or PEI hereunder." Delta-T argues that there could have been no other reason for Campbell-Sevey to enter into the back-up agreement with Pacific Ethanol except that Campbell-Sevey accepted the assignments. (Delta-T Mem. Opp. S.J. 19.) The Court finds this argument to be nonsensical, especially since the opposite conclusion would most likely follow: if Campbell-Sevey had accepted the assignments, it would have even *less* need for a direct agreement with Pacific Ethanol because Pacific Ethanol would already be on the hook for the Brawley Purchase Order payments via the assignments. Further, Campbell-Sevey argues and has brought forth evidence showing that it entered the July 2008 Payment Agreement because it became worried when Delta-T failed to make timely payments and decided to cover itself by entering into the back-up agreement with Pacific Ethanol. (Graves Aff. Ex. J at ¶ C; Pltf's Mem. Supp. 10.) Delta-T has failed to proffer evidence showing that Campbell-Sevey entered into the agreement because it had waived the

21

written consent provisions of the Brawley Purchase Orders and believed the assignments to be valid. In sum, Delta-T has failed to bring forth specific facts creating a genuine issue as to whether Campbell-Sevey waived the notice provisions of the Brawley Purchase Orders.

In addition, the Court notes that even if Campbell-Sevey had waived the written consent provisions of the Brawley Purchase Orders or if Campbell-Sevey had expressly consented to the assignment, Delta-T has not brought forth evidence showing that Campbell-Sevey agreed to relieve Delta-T of its ultimate payment obligation. Instead, as discussed above, Campbell-Sevey consistently expressed its expectation that Delta-T (and Bateman) would remain ultimately responsible for payment. Further, section 2-210 of the Uniform Commercial Code (which both Virginia and California have incorporated verbatim into their state commercial codes) states: "No delegation of performance relieves the party delegating of any duty to perform or any liability for breach." U.C.C. § 2-210; Va. Code. Ann. § 8.2-210(1); Cal. Comm. Code § 2210((1). Thus, even if Delta-T validly assigned (or more precisely, delegated)[12] its duty of payment to Pacific Ethanol, Delta-T remains ultimately liable for payment.[13]

Lastly, contrary to Delta-T's argument, the consent judgment Campbell-Sevey obtained against Pacific Ethanol in Colorado does not preclude summary judgment or create a genuine issue of material fact with respect to damages. A party may collect the full amount of its damages only once; amounts collected in one action offset payment on a judgment in another action. *Nizan v. Wells Fargo Minn. Nat'l Assoc.*, 650 S.E.2d 497, 506 (Va. 2007). The defense of double recovery arises from a claim as to the same damages, *not* the same basis of liability for the damages. *Id.* Campbell-Sevey concedes that any amount it collects from Pacific Ethanol

---

[12] U.C.C. § 2-210(5) (2009); 1 White and Summers, Uniform Commercial Code § 3-13 (2009).

[13] "…delegation does not discharge the original party. If things work out badly, the original party will be a proper defendant." 1 White and Summers, Uniform Commercial Code § 3-13(b) (2009).

22

under the consent judgment would offset any amount collected from Delta-T or Bateman. (Pltf's Reply S.J. 7.) Of course, Delta-T is also free to institute an indemnification proceeding against Pacific Ethanol in the proper jurisdiction, as discussed above.

Therefore, for the reasons discussed above, the Court finds that Campbell-Sevey is entitled to summary judgment on Count 2 of the Complaint, entitling Campbell-Sevey to payment of all amounts outstanding under the Brawley Purchase Orders, for a total of $1,545,734.28.

*2. Campbell-Sevey is Entitled to Summary Judgment on Delta-T's Breach of the April 2008 Payment Agreement (Count 1)*

Delta-T does not appear to dispute Campbell-Sevey's claims under the April 2008 Payment Agreement. (Graves Aff. Ex. A.) Instead, Delta-T's only argument with respect to the amounts due under the April 2008 Payment Agreement is that some of the damages Delta-T seeks in its counterclaim may offset amounts owing under the agreement. (Delta-T Mem. Opp. S.J. 23.) However, the mere possibility that Delta-T may prevail on its counterclaim does not create a genuine issue for trial with respect to liability under the April 2008 Payment Agreement. Campbell-Sevey is therefore entitled to summary judgment on Count 1 of the Complaint, which includes the amount outstanding under the April 2008 Payment Agreement of $646,998.73 plus interest accrued, costs and attorneys fees.

*3. Campbell-Sevey is Entitled to Partial Summary Judgment on Bateman's Breach of the Guaranty (Count 3)*

a. The April 2008 Payment Agreement

Campbell-Sevey argues that the Bateman Guaranty provides a guaranty of every single one of Delta-T's obligations to Campbell-Sevey, past and future. Delta-T concedes that the Guaranty applies to at least the April 2008 Payment Agreement, as well as purchase orders and

23

agreements related to the April 2008 Payment Agreement.  Therefore, Delta-T has failed to set forth specific facts showing that there is a genuine issue for trial with respect to liability under the Guaranty as it applies to the April 2008 Payment Agreement and purchase orders and agreements related to the April 2008 Payment Agreement.   As a result, Campbell-Sevey is entitled to partial summary judgment on Count 3 of the Complaint, which includes the amount outstanding under the April 2008 Payment Agreement of $646,998.73 plus interest accrued, costs and attorneys fees.

### b.  The Brawley Purchase Orders

With respect to the issue of whether the Guaranty extends to cover Campbell-Sevey's claims relating to the Brawley Purchase Orders, the Court finds that Delta-T has established a genuine issue of material fact precluding summary judgment.  Although the Guaranty does not contain a choice of law provision, the parties appear to agree that Minnesota law applies. (Delta-T Mem. Opp. S.J. 33.)  Under Minnesota law, summary judgment is not appropriate where the terms of the contract are ambiguous.  *Bank Midwest v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004) (citing *Donnay v. Boulware*, 144 N.W.2d 711, 716 (Minn. 1966)).  Viewed in the light most favorable to Delta-T, the Court cannot tell from the face of the Guaranty whether the parties intended the term "Agreements" to include the Brawley Purchase Orders and/or other past or future purchase orders unrelated to the April 2008 Payment Agreement.  Therefore, to the extent Campbell-Sevey seeks summary judgment on the issue of whether the Guaranty extends to the Brawley Purchase Orders, the motion should be denied.

### c.  Extra Service Hours

Campbell-Sevey argues it is entitled to summary judgment on extra service hours totaling $38,280 relating to the Pinal, Riga, and Madrid projects.  Delta-T does not dispute the amounts

24

claimed – instead it simply contends that the claim is not properly before the Court because the extra service hours were not specifically mentioned in the First Amended Complaint. While the extra service hours may not have been expressly claimed in the First Amended Complaint, the Court finds that the extra service hours claims fall under the terms of the Bateman Guaranty. The Pinal, Riga, and Madrid projects were ongoing at the time the April 2008 Payment Agreement was concluded, and therefore (even under Delta-T's definition of the term) must be included under the term of "Agreements" within the Guaranty. (Graves Aff. Ex. Q; Graves Aff. Ex. C.) As Delta-T has failed to set forth specific facts showing that there is a genuine issue for trial with respect to whether the Guaranty covers the extra service hours, Campbell-Sevey is entitled to summary judgment to the extent the extra service hours claim is covered by the Bateman Guaranty in the amount of $38,280 plus attorneys' fees and costs.

4. *Genuine Issues of Material Fact Preclude Summary Judgment on Delta-T's Counterclaim*

The Court finds that Delta-T has established genuine issues of material fact precluding summary judgment on Delta-T's counterclaim. The counterclaim alleges that Campbell-Sevey is liable to Delta-T for actual and liquidated damages arising from seven purchase orders relating to five ethanol projects – Pinal, Riga, Madrid, NEDAK, and Burley. (Delta-T Counterclaim ¶¶ 44-48.)

The Court finds that the contract provisions regarding damages are ambiguous and therefore preclude summary judgment. First, with respect to whether notice was required, although each purchase order contains a provision stating that liquidated damages "shall be assessed" for failure to complete work, each purchase order also contains language stating "Any claims by [Delta-T] for loss due to delay in delivery or completion of work shall be waived unless made in

writing and delivered to [Campbell-Sevey within five (5) days after delivery or completion of work." (Graves Aff. Ex. L at 11, 19; Ex. R at 11, 20; Ex. V at 11, 19; Ex. Z at 19, 21; Ex. DD at 19, 21.) The Key Supplier Agreement, which governs the purchase orders, contains similar language albeit with a 15-day window. (Graves Aff. Ex. F at 11.) Read together, these provisions are ambiguous with respect to whether notice is required for liquidated damages. Campbell-Sevey contends that Delta-T waived any claim to liquidated damages because Delta-T failed to give required written notice. As the Court finds the contract language to be ambiguous, summary judgment on the liquidated damages must be denied.

Second, the Court also finds that the contract language is ambiguous as to whether recovery is limited to liquidated damages or whether recovery may encompass both liquidated and actual damages. Thus, summary judgment on actual damages must be denied as well.

5. *Campbell-Sevey Must Provide Adequate Documentation of Alleged Attorney's Fees and Interest Calculations Consistent with this Report and Recommendation*

To the extent the Court has recommended summary judgment on Counts 1 and 3, Campbell-Sevey is entitled to attorneys' fees and costs. Specifically, Campbell-Sevey is entitled to fees and costs under the April 2008 Payment Agreement and the Bateman Guaranty. (Graves Aff. Ex. A ¶¶ 4, 6; Ex. K.) However, the record is inadequate to determine the amount owed. (Kirwin Supp. Aff. ¶ 3, Ex. 1.) The amount of fees owed may be properly determined upon a motion for attorneys' fees together with a detailed accounting of fees consistent with the findings of this Report and Recommendation. As the Court has recommended summary judgment be denied with respect to whether the Guaranty covers the Brawley Purchase Orders, it is premature for the Court to consider whether Campbell-Sevey is owed fees incurred with respect to Brawley Purchase Order claims.

26

The record is also inadequate to determine interest owed to date under the April 2008 Payment Agreement. The amount of interest owed may also be determined upon the proper motion accompanied by a detailed accounting of interest accrued through the date of this Report and Recommendation.

6. *Conclusion and Summary of Findings With Respect to Campbell-Sevey's Motion for Summary Judgment*

1. Campbell-Sevey is entitled to summary judgment against Delta-T on the April 2008 Payment Agreement in an amount totaling $646,998.73 plus interest at a rate of one percent per month through the date of this Report and Recommendation. (Graves Aff. Ex. A at ¶ 4.) Campbell-Sevey is also entitled to Campbell-Sevey's out-of-pocket expenses related to enforcing the agreement, including attorneys' fees and costs. *Id.* at ¶ 6.

2. Campbell-Sevey is entitled to summary judgment against Delta-T on the Brawley Purchase Orders in the amount of $1,545,734.28. (Graves Aff. Ex. C.)

3. Campbell-Sevey is entitled to summary judgment against Bateman on the Guaranty to the extent it applies to the April 2008 Payment Agreement, for an amount totaling $646,998.73 plus interest at a rate of one percent per month through the date of this Report and Recommendation.

4. Campbell-Sevey is entitled to summary judgment against Bateman on the extra service hours claims, for an amount totaling $38,280.00, plus attorneys' fees and costs related to the extra service hours claims. (Graves Aff. Exs. C, K.)

5. Campbell-Sevey is also entitled to recover from Bateman its reasonable out-of-pocket expenses related to enforcing the Bateman Guaranty and the April 2008 Payment Agreement, including attorneys' fees and costs. (Graves Aff. Ex. K.)

6. Campbell-Sevey is not entitled to summary judgment on the issue of whether the Bateman Guaranty extends to the Brawley Purchase Orders. Therefore, at this time, Campbell-Sevey may not recover against Bateman for attorneys' fees or costs relating to

enforcing the Brawley Purchase Orders.

7. Campbell-Sevey is not entitled to summary judgment on the Delta-T counterclaim.

## III.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Motion to Dismiss by Pacific Ethanol [#38] be **GRANTED** and that the Motion to Sever/Transfer by Delta-T Corporation [#56] be **DENIED.**  The Court further recommends that Plaintiff's Motion for Summary Judgment [# 78] be **GRANTED in part** and **DENIED in part**.


DATED: February 18, 2010                          *s/ Franklin L. Noel*
                                                                    FRANKLIN L. NOEL
                                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 4, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 4, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.